## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**MICHAEL FUGETT,**

**CIVIL ACTION FILE NO:**

*Plaintiff*,

**v.**

**ALTEX PACKAGING INC.**    **JURY DEMAND**

*Defendant*.

## COMPLAINT

**NOW COMES** Michael Fugett (hereinafter "Plaintiff"), by and through his counsel, and asserts this Complaint against Defendant Altex Packaging Inc. (hereinafter "Defendant") for violations of Title VII of the Civil Rights Act of 1964, as amended, 42, U.S.C. § 2000e, *et seq.* (hereinafter "Title VII") and for Title II of the Americans with Disabilities Act of 1990 (hereinafter the "ADA), and for violations of the Family and Medical Leave Act of 1993, 29 U.S.C. §2601 *et. seq.* (hereinafter "FMLA"), and under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634 ("ADEA")Plaintiff states more fully as follows:

## INTRODUCTION

1.    Defendant is a private American company that provides one stop design and production of packaging for electronics companies, food and beverage companies,

and medical and pharmaceutical companies, amongst others, from operational sites in Atlanta, Georgia and with operations in other locations.

2.      The Plaintiff is a former employee of Defendant who worked for more than five (5) years for the Defendant. The Plaintiff is a man in his fifities who worked as a Senior Floor Manager for several years of his career with Defendant. In December 2023, Plaintiff suffered from a subdural hematoma while at work and could not perform his work duties. As a result, Plaintiff suffered from Aphasia which affects his memory and communication abilities – simply put, he has trouble remembering certain words in the context of a conversation and needs a few extra seconds to "find the right word." Plaintiff took some time off under FMLA leave from the Defendant. In about mid-January 2024, Plaintiff's Doctor informed him that the Plaintiff was fit to return to work *while wearing protective headgear*. Plaintiff requested an accommodation to allow him to work but was offered neither intermittent FMLA leave nor a designated ADA based accommodation. Plaintiff met with Defendant's representatives several times and was led to believe he could continue working for Defendant, but other representatives of Defendant made statements that indicated the Defendant believed Plaintiff would never work for Defendant due to his real and perceived disability. Defendant terminated the Plaintiff for pretextual reasons. Accordingly, the Plaintiff has brought claims against Defendant for, among other

claims, interference with the FMLA, retaliation under the FMLA, failure to provide necessary FMLA notices, and ADA based discrimination and retaliation.

3.     Plaintiff is also over fifty (50) years old, and has worked all of his employment term with the Defendant as a man over the age of forty (40).  Plaintiff has significant experience – more than thirty years in this field, as well as numerous other qualifications, such as packaging for military applications and weapons and training from his previous employer Dupont. Defendant replaced his position as a Senior Floor Manager with an employee, aged approximately thirty (30) years old, that only had a High School diploma and significantly less employment experience and training. As a result of Defendant's actions, the Plaintiff has brought suit under the ADEA for aged based discrimination and/or retaliation.

<u>JURISDICTION</u>

4.     Plaintiff bring this action under Family and Medical Leave Act, 29 U.S.C. §2601 *et. seq*., Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et. seq*., the ADA, 42 U.S.C. §§ 12131-2 and 28 U.S.C. §§ 1331 and 1345, and the ADEA, 29 U.S.C. §§ 621-634. This Court has original jurisdiction pursuant to 42 U.S.C. §2003e-5(f), 28 U.S.C. §1345, 28 U.S.C. §1331, and 28 U.S.C. §1343(a).  This Court has original jurisdiction pursuant to 29 U.S.C. §2617(a)(2), 29 U.S.C. §1132(e) and 29 U.S.C. §1132(f), and 28 U.S.C. §1331 and §1337.

VENUE

5.    Defendant is an Alabama-based corporation with a Georgia office at 154 Industrial Park Circle, Lawrenceville, Georgia 30046. Defendant may be served through its registered agent Randall R. Rigsby, 1205 Front Street Building B, Anniston, Alabama 36201. Venue for this action properly lies in the Northern District of Georgia, Atlanta Division, pursuant to 42 U.S.C. §2003e-5(f)(3), 28. U.S.C. §1391(b) and §1391(c)(2), as a substantial portion, if not all, of the acts and commissions giving rise to this action occurred in the Northern District of Georgia. 28 U.S.C. § 1391(b).

FACTUAL ALLEGATIONS

Sub-Part A: Plaintiff

6.    Plaintiff Michael Fugett is a resident of Georgia, residing in the Northern District of Georgia.

7.    Plaintiff is a white male aged fifty-two (52).

8.    Defendant employed Plaintiff on or about 2018 as a floor manager.

9.    On or about 2019, Defendant promoted Plaintiff to the position of Senior Floor Manager, which included significantly more duties, such as Standard Operating Procedure, writing and training coordination, and basic human resources duties.

10.    On or about March 4, 2024, Defendant terminated Plaintiff.

4

11.    Thus, Defendant employed Plaintiff for the period 2018 through March 2024 (hereinafter the "Employment Period.")

12.    As of approximately December 2023 Plaintiff has a clinical diagnosis of Aphasia which affects Plaintiff's memory and ability to communicate.

13.    In addition, Plaintiff underwent multiple surgeries as a result of his subdural hematoma in December 2023 that required several days of hospitalization, multiple visits to doctor's offices, and the use of a helmet to protect Plaintiff's head between December 2023 and March 2024.

14.    Thus, for several months during the last year of Plaintiff's Employment Period, Plaintiff suffered from Aphasia, dealt with memory issues and had some difficulty communicating, and was required to wear a helmet.

15.    Defendant employed Plaintiff for work for approximately forty (40) hours per week during the Employment Period, including more than 1,250 hours during 2023.

<u>Sub-Part B: Defendant</u>

16.    Defendant has more than 100 employees in the south east United States

17.    Defendant operates an office and factory at 154 Industrial Park Circle, Lawrenceville, Georgia 30046 (hereinafter the "Atlanta Factory.")

18.    During the Employment Period, Defendant employed at least fifty (50) employees within seventy-five (75) miles of the Atlanta Office, in both calendar years 2023 and 2024.

19.    Defendant has employed more than fifteen (15) employees for each working day in at least 20 or more calendar weeks during the Employment Period. As such, Defendant is subject to, and governed by, Title VII.

20.    Defendant is a "person" within the meaning of 42 U.S.C. §2000e(a) and an "employer" within the meaning of 42 U.S.C. §2000e(b).

21.    During at least 2-23 and  2024 of the Employment Period, Defendant used ADP Total Source as a third-party administrator for Defendant's FMLA based leave practices and procedures.

22.    Randall Rigsby  ("Rigsby") is the principal owner of  Defendant.

23.    Drew McCorkle ("McCorkle") is employed by Defendant as a Plant Manager of the Atlanta Factory.

24.    Randy McCorkle ("R. McCorkle") is employed by Defendant as a General Manager of the Atlanta Factory.

25.    Defendant did not have a Human Resources Manager at the Atlanta Factory during at least 2023 and 2024 of the Plaintiff's Employment Period

<u>Sub-Part C: Plaintiff's FMLA Surgery Based Facts</u>

26.    On or about December 10, 2023, while at work or immediately after leaving work at the Atlanta Factory, Plaintiff suffered a subdural hematoma.

27.    Plaintiff was treated for his subdural hematoma and its initial recovery through a craniectomy with at least five (5) nights of overnight hospital stays for

treatment and recovery from doctors at Northside Hospital in Lawrenceville, Georgia, between December 10, 2023, and December 15, 2023.

28.    Plaintiff was subsequently treated for the effects of the subdural hematoma and craniectomy again at Northside Hospital in Lawrenceville, Georgia between December 31, 2023, and January 2, 2024.

29.    Plaintiff was subsequently treated for the effects of the subdural hematoma and craniectomy at St. Mary's Hospital in Athens, Georgia between January 27, 2024, and January 30, 2024.

30.    Sometime in December 2023, Defendant informed Plaintiff that he would have FMLA leave and would also receive short-term disability payments. Plaintiff also had paid time off available to him.

31.    On or about December 15, 2023, Plaintiff was released from Northside Hospital after his initial hospital stay.

32.    Plaintiff's doctor, Dr. Bannergee, informed Plaintiff that the usual recovery time for Plaintiff's condition was approximately three (3) months and that his estimated disability term would end on or about March 10, 2024.

33.    On or about January 17, 2024, Dr. Bannergee informed the Plaintiff that he was able to return to work immediately provided Plaintiff was wearing protective head gear while at work.

34.    Plaintiff's protective head gear consisted of a foam helmet which was clearly visible to any person who viewed Plaintiff.

35.    The foam helmet did not impede Plaintiff's vision, hearing, or affect his ability to walk and/or talk to employees at the Atlanta Factory.

36.    On January 17, 2024, after Plaintiff visited with his doctor, Plaintiff drove to the Atlanta Factory to visit with Defendant's employees.

37.    On January 17, 2024, Plaintiff met with numerous individuals including McCorkle and R. McCorkle at the Atlanta Factory while wearing a foam helmet and informed Defendant of his current condition and plans to return.

38.    On January 17, 2024, Plaintiff informed McCorkle and R. McCorkle that he was capable of working his previous position as Senior Floor Manager and that Plaintiff had been "cleared to work" by his surgeon, Dr. Bannergee.

39.    McCorkle and R. McCorkle acknowledged Plaintiff's statement but expressed concern that Plaintiff's helmet could "create issues."

40.    After hearing McCorkle's statement, R. McCorkle disagreed and claimed that they were not comfortable with Plaintiff's return while wearing a helmet and it would be "unsafe" to have Plaintiff return to work while wearing a foam helmet.

41.    Plaintiff disagreed with R. McCorkle's assessment, and pointed out to Defendant's representatives McCorkle and R. McCorkle that not only could he do

8

the work, that Plaintiff had been promised a job of Human Resources Director and would be working soon in the office area of the Atlanta Factory.

42.    Plaintiff also pointed out to Defendant's representatives McCorkle and R. McCorkle that the Atlanta Factory's administrative offices and front offices were safe and that Defendant regularly allowed employees to bring children, including infants, in to work and stay with the employees in the Atlanta Factory's administrative offices and front offices.

43.    Plaintiff continued to speak with Defendant's representative McCorkle several times in February 2024 regarding his condition, his availability to work and his readiness to return to work.

44.    On or about March 4, 2024, Defendant terminated Plaintiff.

45.    Defendant did not inform Plaintiff of his termination until approximately April 9, 2024.

46.    Following their verbal approval of Plaintiff's December 2023 FMLA request, Defendant did not provide Plaintiff with a written "eligibility notice" required under 29 C.F.R. §825.300(b).

47.    Further, Defendant did not provide Plaintiff with an additional written copy of the "rights & responsibilities notice" required under 29 C.F.R. §825.300(c).

48.    Nor, at this time, did Defendant opt to use – and provide in writing to Plaintiff - the Department of Labor's combined "Notice of Eligibility, and Rights & Responsibilities" form, as allowed 29 C.F.R. §825.300(b)(2).

49.    Nor, at this time, did Defendant opt to use – and provide in writing to Plaintiff - the Department of Labor's combined "Notice of Eligibility, and Rights & Responsibilities" form, as allowed 29 C.F.R. §825.300(b)(2).

50.    Of particular interest, if Defendant was going to require Plaintiff to submit a completed medical certification, that requirement should have been disclosed in writing on a new "rights & responsibilities notice" pursuant to 29 C.F.R. §825.300(c)(1)(ii), §825.300(c)(3) and §825.300(c)(4); 29 C.F.R.§825.305(a). Additionally, the "rights & responsibilities notice" must state the time period in which the medical certification must be returned and the consequences of failing to provide a completed medical certification form. 29 C.F.R. §825.305(b), §825.305(d) and §825.300(c)(1)(ii).

51.    Once a determination was made that Plaintiff was potentially eligible for FMLA leave, Defendant should have then provided Plaintiff, within five (5) days, with a new "designation notice." See 29 C.F.R. §825.300(d); see also WHD form WH-382.

52.     Defendant did not provide Plaintiff with a written "designation notice" related to his December 2023 medical leave. See 29 C.F.R. §825.300(d); see also WHD form WH-382.

53.     Under 29 C.F.R. §825.305(b), an employer must provide an employee with at least fifteen (15) days in which to return a medical certification form.

54.     However, because Defendant did not provide Plaintiff with a written "rights & responsibilities notice," 29 C.F.R. §825.300(c), which would have included the time-period requirement and a description of the consequences for failing to return a medical certification form, Defendant is precluded from taking any adverse action against Plaintiff related to any issue which would have been discussed in the "rights & responsibilities notice." See 29 C.F.R. §825.300(c)(1)(ii) and §825.305(d).

Sub-Part D: Plaintiff's ADA Based Facts

55.     In or about December 2023, the Plaintiff was diagnosed with Aphasia, which affects Plaintiff's memory and his ability to communicate.

56.     By way of example, while at the beach the Plaintiff saw a manatee and needed several seconds to recall the word for manatee. Plaintiff on occasion cannot recall the term for an object and must describe the object until his mind finally arrives at the particular object. This process can take a few seconds and delays, but does not stop or inhibit, communication with individuals.

57.    Plaintiff's Aphasia and related effect affect Plaintiff's major life activities, such as, but not limited to, Plaintiff's ability to concentrate and/or communicate, among other major life activities.

58.    Accordingly, Plaintiff's condition(s) constitute a disability or disability under the ADA.

59.    Plaintiff had a basic, but not scholarly or legal knowledge of the ADA or an ADA based accommodation during the Employment Period.

60.    In or about January and February 2024, Plaintiff made several requests for an accommodation and or accommodations for his work as a Senior Floor Manager in order to respond to the effects of the Plaintiff's Aphasia, memory and communication issues.

61.    In or about January through April 2024 (if not beyond), Defendant had numerous positions available that Defendant could have worked.

62.    In or about January through April 2024, Defendant could have continued to allow Plaintiff to work as a Senior Floor Manager by allowing Plaintiff additional time to communicate, or other options to allow Plaintiff the time necessary to effectively communicate, or other options, such as allowing more communication through text, email, or other means.

63.    In or about January through April 2024, Defendant also had other, lesser positions available at the Atlanta Factory that it could have employed Plaintiff to

perform, for which Plaintiff was qualified for and able to perform, such as, but not limited to area lead, customer service, and/or design team support, training, and human resources administration.

64.     In or about January through April 2024, Plaintiff was qualified as and could also have adequately performed the duties as a Human Resources Director, Senior Floor Manager, floor manager, or other positions such as those listed above for the Atlanta Factory, had the Defendant provided accommodation(s) to the Plaintiff, such as (and as an example) by allowing the Plaintiff additional time to communicate or allowing more communication to occur through text, type, e-mail, or other, written means.

65.     On or about March 4, 2024, the Defendant terminated Plaintiff, in part or wholly due to, his continuing disability and/or disabilities.

66.     Plaintiff's performance played no role in Defendant's decision to terminate him.

## ADMINISTRATIVE CONDITIONS PRECENDANT

67.     Plaintiff satisfied all conditions precedent to filing this action, including filing Charges of Discrimination with the U.S. Equal Employment Opportunity Commission (hereinafter "EEOC") in a timely manner, within 180 days of the alleged incidents See the attached Exhibit "A."

68.    Plaintiff received his Notice of Right to Sue from the EEOC, and this lawsuit is being filed within ninety (90) days of that receipt. See the attached Exhibit "B."

Sub-Part E: Plaintiff's ADEA Based Facts

69. Plaintiff was over fifty (50) at the time of his employment with Defendant.

70.    Plaintiff has decades of work experience in manufacturing, including numerous certifications, training, and management experience.

71.    Defendant has consistently praised the Plaintiff for his work as a Senior Floor Manager.

72.    Some time in or about December 2023, Plaintiff's position as Senior Floor Manager was provided to a thirty-year old male with only a high school education and limited qualifications.

73.    At the time of Plaintiff's termination, Plaintiff was qualified for the position.

74.    Plaintiff was terminated in part or whole due to his age.


**COUNT I:  FAILURE TO PROVIDE NOTICES UNDER THE FMLA**

75.    Plaintiff re-alleges and incorporates by reference paragraphs one (1) through seventy-five (75) of this Complaint.

76.    During the Actionable Time Period, Defendant was an "employer" as defined in 29 U.S.C. §2611(4).

14

77    During the Actionable Period and having worked in excess of 1,250 hours in the twelve months preceding his employment in 2023, Plaintiff was an "eligible employee" as defined in 29 U.S.C. §2611(2).

78.    Plaintiff's continued treatment for Aphasia, memory and communication issues, as well as his continued treatment, surgery, and recovery, from the craniectomy, as well as his inability to perform one (1) or more of the essential functions of his job constituted a "serious health condition" as defined in 29 U.S.C. §2611(11).

79.    Immediately preceding his December 2023 through March 2024, the Plaintiff was entitled to twelve (12) weeks or less of FMLA leave pursuant to 29 U.S.C. §2612(a)(1)(D).

80.    Regarding the Plaintiff's FMLA leave in December 2023 through March 2024, Defendant failed to provide Plaintiff with the "eligibility notice" required under 29 C.F.R. §825.300(b).

81.    Regarding the Plaintiff's FMLA leave in December 2023 through March 2024, Defendant failed to provide Plaintiff with the "rights & responsibility notice" required under 29 C.F.R. §825.300(c).

82.    Regarding the Plaintiff's FMLA leave in December 2023 through March 2024, Defendant failed to provide him with the "Notice of Eligibility, and Rights & Responsibility" as provided under 29 C.F.R. §825.300(b)(2).

83.    Regarding the Plaintiff's FMLA leave in December 2023 through March 2024, Defendant failed to provide him with a written copy of the "designation notice" required under 29 C.F.R. §825.300(d).

84.    Regarding the Plaintiff's FMLA leave in December 2023 through March 2024, Defendant failed to provide him with the "rights & responsibilities notice" required under 29 C.F.R. §825.300(c).

85.    Regarding the Plaintiff's FMLA leave in December 2023 through March 2024,  Defendant failed to provide him with the "Notice of Eligibility, and Rights & Responsibilities" form, as allowed under 29 C.F.R. §825.300(b)(2).

86.    Defendant's failure to provide the mandated notices constitutes an illegal interference with the Plaintiff's rights under the FMLA in violation of 29 U.S.C. §2615(a)(1) and 29 C.F.R. §825.300(e). Plaintiff is entitled to recover his lost wages, liquidated damages in an equal amount, his reasonable attorneys' fees and costs, and to be reinstated to the same or equivalent position. 29 U.S.C. §2617(a)(1)(A), 29 U.S.C. §2617(a)(3) and 29 C.F.R. §825.400(c).


**COUNT II: ILLEGAL INTERFERENCE WITH FMLA RIGHTS**

87.    Plaintiff re-alleges and incorporates by reference paragraphs one (1) through seventy-five (75) of this Complaint.

88.     Plaintiff was employed by Defendant for at least twelve months, and  Plaintiff had performed at least 1,250 hours of service during the previous twelve-month period. *Id.* § 2611(2).

89.     Under the FMLA, "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." *Id.* § 2615(a).

90.     The FMLA"s "prohibition against „interference" prohibits an employer from discriminating or retaliating against an employee . . . for having exercised or attempted to exercise FMLA rights. . . ." 29 C.F.R. § 825.220(c).

91.     "[E]mployers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions, or disciplinary actions." *Id.*

92.     Employers who violate the FMLA "may be liable for compensation and benefits lost by reason of the violation, for other actual monetary losses sustained as a direct result of the violation, and for appropriate equitable or other relief, including employment, reinstatement, promotion, or any other relief tailored to the harm suffered." *Id.* § 825.220(b); 29 U.S.C. § 2617.

93.     Defendant discriminated against Plaintiff in violation of the FMLA when Defendant terminated Plaintiff after he requested FMLA leave and/or returned from

FMLA-protected leave, and/or while regularly taking FMLA leave in the preceding months, thereby interfering with Plaintiff's right to reinstatement and other rights under the FMLA.

94.    Defendant's actions were intentional, willful, and in reckless disregard of Plaintiff's rights under the FMLA.

95.    Plaintiff has suffered damages as a result of Defendant's unlawful actions.


## COUNT III: RETALIATION FOR TAKING FMLA LEAVE

96.    Plaintiff re-alleges and incorporates by reference paragraphs one (1) through seventy-five (75) of this Complaint.

97.    Plaintiff was employed by Defendant for at least twelve months, and had performed at least 1,250 hours of service during the previous twelve-month period. *Id.* § 2611(2).

98.    The FMLA makes it unlawful for an employer to discriminate or retaliate against an employee who exercises his right to family care leave. 29 U.S.C. § 2615(a)(1)("It shall be unlawful for an employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this chapter."); 29 U.S.C. 2615(a)(2)("It shall be unlawful for any employer to discharge or in any

other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.")

99.    Defendant retaliated against Plaintiff because he exercised his rights under the FMLA, by, *inter alia,* terminating Plaintiff's employment directly after he requested, continued, and/or returned from approved medical leave in or about March 4, 2024.

100.    As a direct and proximate result of the Defendant's conduct, Plaintiff has suffered special damages.

101.    Plaintiff is also entitled to liquidated damages under 29 U.S.C. §2617(a)(1)(A)(iii) as Defendant has not acted in good faith and there are no reasonable grounds for believing they were not violating the FMLA.

102.    Plaintiff is entitled to appropriate equitable relief, including employment, reinstatement, and promotion. 29 U.S.C. § 2617(a)(1)(B).

103.    Plaintiff is entitled to costs and reasonable attorney's fees pursuant to 29 U.S.C. § 2617(a)(1)(A)(3).

**COUNT IV:  FAILURE TO REINSTATE PLAINTIFF UNDER THE FMLA**

104.    Plaintiff re-alleges and incorporates by reference paragraphs one (1) through seventy-five (75) of this Complaint.

105.   During the Employment Period Defendant Athena was an "employer" as defined in 29 U.S.C. §2611(4).

106.   During the Employment Period and having worked in excess of 1,250 hours in the twelve months preceding his 2023 and 2024 FMLA leave Plaintiff was an "eligible employee" as defined in 29 U.S.C. §2611(2).

107.   Plaintiff's continued treatment for Aphasia and its effects, as well as his continued treatment, surgery, and recovery, head surgery, as well as his inability to perform one (1) or more of the essential functions of her job constituted a "serious health condition" as defined in 29 U.S.C. §2611(11).

108.   Immediately preceding his December 2023 through March 2024 FMLA leave, the Plaintiff was entitled to twelve (12) weeks or less of FMLA leave pursuant to 29 U.S.C. §2612(a)(1)(D).

109.   Plaintiff began his FMLA leave on or about December 11, 2023.

110.   Defendant terminated Plaintiff's employment on or about March 4, 2024.

111.   Defendant's termination of Plaintiff's employment during or immediately following designated FMLA leave (or what should have been designated FMLA leave) constitutes a violation of 29 U.S.C. §2614(a)(1) (job restoration rights), an impermissible interference with the Plaintiff's rights under the FMLA in violation of 29 U.S.C. §2615(a)(1), and unlawful termination under 29 U.S.C. §2615(a)(2). Plaintiff is entitled to recover his lost wages, liquidated damages in an equal amount,

his reasonable attorneys' fees and costs, and to be reinstated to the same or equivalent position. 29 U.S.C. §2617(a)(1)(A), 29 U.S.C. §2617(a)(3) and 29 C.F.R. §825.400(c).

## COUNT V: ADA DISCRIMINATION & FAILURE TO ACCOMODATE

112.    Plaintiff re-alleges and incorporates by reference paragraphs one (1) through seventy-five (75) of this Complaint.

113.    On or about July 12, 2024, Plaintiff filed a Charge of Discrimination against the Defendant with the Equal Employment Opportunity Commission ("EEOC.")

114.    On or about October 15, 2024, Plaintiff received a Notice of Right To Sue letter from the EEOC.

115.    Plaintiff has timely filed his Charge of Discrimination with the EEOC and has timely filed this suit after receipt of his Notice of Right To Sue from the EEOC.

116.    Title I of the ADA prohibits covered entities from discriminating against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.  42 U.S.C. § 12112(a); 29 C.F.R. § 1630.4.

117.   Because his Aphasia and associated concentration and communication issues limits at least one of Plaintiff's major life activities, Plaintiff is an individual with a disability under the ADA.

118.   Plaintiff was fully qualified to work in his position as Senior Floor Manager and could and did perform all of the essential functions of the position and had worked in that position for  Defendant for more than a year.

119.   Defendant is a covered employer to which the ADA applies.

120.   Plaintiff was discriminated against on the basis of his disability by Defendant in that Defendant in that has subjected Plaintiff to disparate treatment based upon his disability and refused to grant his request for a reasonable accommodation.

121.   The effect of Defendant's discriminatory employment practices has denied Plaintiff of equal employment opportunities, income in the for of wages, and other benefits of employment because of his disability.

122.   Defendant has intentionally and knowingly discriminated against Plaintiff in the terms and conditions of his employment.

123.   Defendant discriminated against the Plaintiff by terminating him on the basis of disability.  42 U.S.C. §§ 12102, 12111, 12112; 29 C.F.R. §§ 1630.2, 1630.4.

124.   As a result of Defendant's discriminatory employment practices, Plaintiff has suffered undue mental and physical anguish and stress. As a further direct result of Defendant's discriminatory employment practices, Plaintiff has been humiliated, embarrassed, and otherwise mentally degraded.

125.   As a direct and proximate cause of Defendant's discrimination, Plaintiff has lost and will continue to lose income in an amount to be proven at trial.

126.   Because of Defendant's discriminatory conduct, the Plaintiff suffered significant monetary loss, including loss of earnings and other benefits; lost opportunities for advancement; and severe emotional pain, suffering, and other non-pecuniary losses,

127.   Defendant's violations of the ADA was willful and Plaintiff seeks liquidated damages for each violation.

128.   Defendant is liable for Plaintiff's compensatory damages. Because Defendant acted with malice and/or with reckless indiffernce towards the Plaintiff his rights under the ADA, Defendant is also liable for punitive damages. Finally, Defendant is liable for the court costs, reasonable attorney's fees, and expenses Plaintiff has incurred in this matter.

## COUNT VI: ADA RETALIATION

129.    Plaintiff re-alleges and incorporates by reference paragraphs one (1) through seventy-five (75) of this Complaint.

130.    Defendant has acted in violation of Plaintiff's rights under the law and has retaliated against him for having engaged in statutorily protected activity.

131.    Plaintiff engaged in protected activity including, but not limited to, requesting reasonable accommodations under the ADA be put in place  and filing a Charge of Discrimination to the EEOC.

132.    Plaintiff was retaliated against for engaging in protected activity by Defendant as set forth in the paragraphs above with the purpose, intent and effect of intimidating, harassing, humiliating and demeaning Plaintiff and has caused him both economic, physical  and mental harm.

133.    Defendant's actions were purposefully calculated to punish Plaintiff for having engaged in statutorily protected activity.

134.    Due to the retaliation against him by the Defendant, Plaintiff has been damaged in an amount to be proven at trial.

## COUNT VII: ADEA VIOLATION

135.  Plaintiff re-alleges and incorporates by reference paragraphs one (1) through seventy-five (75) of this Complaint.

136.  Plaintiff was subjected to an adverse employment action when Defendant terminated him on March 4, 2024, due to his age, in whole or substantial part, and in violation of the ADEA, 29 U.S.C. §623(1).

137.  Defendant's violation of the ADEA was willful and Plaintiff seeks liquidated damages for each violation.

138.  Plaintiff has been made to suffer mental anguish and emotional distress, loss of employment and future employment opportunities, and loss of wages and benefits, as the direct and proximate result of the Defendants' violation of his civil rights herein described. Plaintiff is reasonably certain to continue to suffer these damages in the future. Plaintiff is entitled to the rights and remedies at law provided by the ADEA, 29 U.S.C. § 216(b), including actual damages, compensatory damages, liquidated damages, and attorney's fees.

## **JURY TRIAL**

139.  Plaintiff demands a jury trial as to all issues triable by a jury trial.

## **PRAYER FOR RELIEF**

140.  **WHEREFORE**, Plaintiff respectfully requests that this Court:

A. Grant Plaintiff a trial by jury as to all triable issues of fact;

B. That, pursuant to 29 U.S.C. §2617(a)(1), issue an Order that Defendant violated the Family and Medical Leave Act by (1) failing to provide the notices required under the FMLA, and (2) by terminating Plaintiff for exercising and/or attempting to exercise his rights under the FMLA;

C. That, pursuant to 29 U.S.C. §2617(a)(1)((A)(i), issue an Order that Defendant be ordered to pay Plaintiff back wages and lost benefits from the date he would have returned from FMLA leave to date of judgment;

D. That, pursuant to 29 U.S.C. §2617(a)(1)((A)(ii), issue an Order that Defendant pay Plaintiff interest on the value of his  back wages and lost benefits from the date he would have returned from FMLA leave to date of judgment;

E. That, pursuant to 29 U.S.C. §2617(a)(1)((A)(iii), issue an Order that Defendant pay Plaintiff liquidated damages in an amount equal to his back wages, lost benefits and interest thereon;

F. That, pursuant to 29 U.S.C. §2617(a)(1)((B),  issue an Order that Defendant reinstate Plaintiff to his last-held position (or equivalent) with the same salary and benefits;

G. That, pursuant to 29 U.S.C. §2617(a)(3) and 29 U.S.C. §1132(g), issue an Order that Defendant pay Plaintiff's reasonable attorneys' fees and costs of this action; and,

H. That the Court issue a declaratory judgment that the Defendant discriminated against Plaintiff in violation of the ADA;

I. That the Court issue an Order that Defendant pay Plaintiff back pay with interest for violation of the ADA;

J. That the Court issue an Order that Defendant pay Plaintiff interest on all back pay recoverable against the Defendant for violation of the ADA;

K. That the Court issue an Order that Defendant pay Plaintiff compensatory and punitive damages against Defendant for violation of the ADA;

L. That the Court issue an order that Defendant pay Plaintiff compensatory and punitive damages for violation of the ADEA;

M. That the Court issue an order that Plaintiff be compensated at the prevailing wage for the job that they perform going forward;

N. That the Court issue an order that awards Plaintiff pre and post judgment interest on all amounts owed as allowed by law pursuant to 28 U.S.C. § 1961;

O. That the Court issue an Order that Defendant pay Plaintiff's attorney's fees and costs in this matter; and,

P.  Issue an Order as to any such other and further relief to which Plaintiff may

be entitled.

Respectfully submitted this tenth (11th) day of January, 2025.


                                                    */s/ Peter H. Steckel*
                                                    Peter H. Steckel
                                                    Georgia Bar Number 491935
                                                    *Counsel for Plaintiff*

Steckel Law, L.L.C.
1120 Ivywood Drive
Athens, Georgia 30606
(404) 717-6220
Email: peter@SteckelWorkLaw.com



## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rules 5.1 and 7.1, I certify that the foregoing pleading is

typewritten using 14 point Times New Roman font type.

                                                    */s/ Peter H. Steckel*
                                                    Peter H. Steckel
                                                    Georgia Bar Number 491935
                                                    *Counsel for Plaintiff*

Steckel Law, L.L.C.
1120 Ivywood Drive
Athens, Georgia 30606
(404) 717-6220
Email: peter@SteckelWorkLaw.com